UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANGELA J. BROWN,           )
                           )
         Plaintiff         )
                           )
v.                         )   No. 1:17-cv-00196-JAW
                           )
NANCY A. BERRYHILL,        )
Deputy Commissioner for Operations, )
Performing the Duties and Functions )
Not Reserved to the Commissioner )
of Social Security,        )
                           )
         Defendant         )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (1) erroneously gave little weight to the report of an independent medical examination performed by Philip R. Kimball, M.D., at the direction of a worker's compensation insurer, (2) failed to adequately account for the plaintiff's pain in assessing her residual functional capacity ("RFC"), and (3) misunderstood the significance of a limitation assessed by agency nonexamining consultant Marcia Lipski, M.D., whose opinion she purported

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

to adopt. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 28) at 1-2. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, Finding 1, Record at 18; that she had the severe impairments of lumbar degenerative disc disease, obesity, bilateral hearing loss, and chronic bilateral mastoiditis with cholesteatoma and ear reconstruction, Finding 3, *id*.; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that, *inter alia*, she was able to lift no more than 10 pounds occasionally and less than 10 pounds frequently and had to be allowed to alternate sitting and standing for up to five minutes per hour, Finding 5, *id*. at 31; that, considering her age (37 years old, defined as a younger individual, on her alleged disability onset date, December 31, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 47; and that she, therefore, had not been disabled from December 31, 2012, through the date of the decision, April 13, 2016, Finding 11, *id*. at 48-49. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Discounting of Kimball Opinion

The plaintiff first contends that the ALJ erred in her consideration of the opinion of Dr. Kimball. *See* Statement of Errors at 6-11. Dr. Kimball examined the plaintiff on January 15, 2014, in connection with a worker's compensation claim involving her former employer, Tranten Family Grocery Store. *See* Record at 765-66. He diagnosed her, in relevant part, with chronic low back and bilateral leg pain, right greater than left; degenerative lumbar disc disease, L3-4 with disc herniation, and L4-5 with right sciatica; degenerative spondylolisthesis, first-degree, L5/S1, preexisting; and status-post six epidural steroid injections in 2013 with transient pain relief. *See id.* at 771.

He determined that the plaintiff had a preexisting back condition that had been aggravated by two work-related incidents:

1. An incident on December 30, 2010, in which repetitive activity unloading pallets caused a herniated disc at L3-4, "which[,] combined with [the plaintiff's] congenital anomalies at

the level of L4-5 and L5/S1[,] limit[ed] her lifting, bending, and physical activities[,]" *id*. at 772-73; and

2. An incident on December 31, 2012, in which, while lifting multiple five-pound bags of produce from a pallet, the plaintiff "significantly aggravated her preexisting condition, enlarging the dis[c] herniation at the level of L3-4" and leading to "bilateral leg pain, right greater than left." *Id*.

Dr. Kimball described the condition caused by the December 30, 2012, incident as having "combined with [the plaintiff's] preexisting condition and prior incident of 2010 to render her disabled from her employment." *Id*. at 773. He added that the plaintiff's "history suggests strongly that she is totally disabled from gainful employment at this time[,]" noting, "This is documented by the MRI studies revealing conditions both congenital and acquired by injury, in her lumbar spine." *Id*.

He described the plaintiff's treatment to that point, "including therapy, spinal injections, opiate medications, and the recent addition of a Fentanyl patch," as "nontherapeutic in nature in that they are not expected to rehabilitate [her] to full working status." *Id*. at 774. He stated that her "extensive spinal pathology in the lumbar spine, both congenital defect and the enlarging herniated dis[c] at L3-4, can only be treated therapeutically by spinal surgery with medical management also." *Id*. He added, "Surgery is more likely to result in lessening of [the plaintiff's] pain and improving her activity level than continuing the use of opiates alone at the age of 38." *Id*.

The ALJ stated that, while she gave significant weight to Dr. Kimball's opinion that the plaintiff could not return to her recent employment, she gave "little weight to his opinion that the

4

[plaintiff]'s history suggests strongly that she is totally disabled from gainful employment." *Id*. at 46 (citation omitted). She explained:

> Dr. Kimball relies on the [plaintiff]'s congenital and acquired injuries as a basis for his opinion, but the [plaintiff] was able to work despite her congenital condition and earlier injuries. He fails to explain his opinion or why the [plaintiff] was unable to perform a lighter level of work. Dr. Kimball likely relied on the [plaintiff]'s statements that she was unable to manage her home and was housebound for days at a time. However, the [plaintiff] has failed to ma[k]e similar statements to her treating sources. Dr. Kimball also opines that the [plaintiff]'s 'extensive spinal pathology' can only be treated therapeutically by spinal surgery with medical management. I have given much greater weight to the statement by Dr. Weitman [David M. Weitman, M.D., Ph.D.] on July 10, 2013, that as long as the [plaintiff]'s symptoms were not too debilitating, it would be wise to hold off on surgery.

*Id*. (citations omitted); *see also id*. at 729.

The plaintiff contends that none of the ALJ's bases for giving little weight to the Kimball opinion is supported by substantial evidence. *See* Statement of Errors at 8-11. She asserts that the ALJ erroneously found that (i) she continued working after her 2012 injury, (ii) Dr. Kimball failed to explain why she could not do lighter work, (iii) Dr. Kimball relied on her statements that she was unable to manage her home and was housebound for days at a time, and (iv) Dr. Weitman's observation regarding the necessity of surgery deserved greater weight than that of Dr. Kimball. *See id*.

Beyond this, the plaintiff argues that there is no substantial evidence that is inconsistent with the Kimball report, as a result of which the ALJ should have "found [her] disabled based on Dr. Kimball's opinions, and erred in failing to do so." *Id*. at 11. For that proposition, she cites Social Security Ruling 96-2p ("SSR 96-2p") and analogizes this case to *Mawhinney v. Heckler*, 600 F. Supp. 783 (D. Me. 1985). *See id*. at 6-7, 11. In *Mawhinney*, this court deemed an ALJ's finding that a claimant with progressive, unstable degenerative disc disease retained the RFC to perform the full range of sedentary and light work unsupported by substantial evidence when the

reports of three medical experts "strongly corroborate[d] the claimant's subjective complaints of pain[,]" and the "record contain[ed] no evidence that [was] inconsistent with these reports." *Mahwinney*, 600 F. Supp. at 785, 787.[2]

These points are unavailing. First, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 30) at 7 n.1, SSR 96-2p is inapposite because it pertains to assessment of the opinions of treating, rather than examining, sources, *see* SSR 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) at 110.[3] "A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons." *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (rec. dec., *aff'd* July 21, 2011) (citing 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), since redesignated as 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)). There is authority that "failure by the ALJ to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error." *Id*. (citation and internal quotation marks omitted).

Second, an opinion that a claimant is disabled is an opinion on an issue reserved to the commissioner and, thus, entitled to no special significance even if offered by a treating source. *See, e.g.*, 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Snowdon v. Colvin*, No. 2:15-cv-

---

[2] The plaintiff also cites *Flannery v. Barnhart*, No. 06-37-B-W, 2006 WL 2827656 (D. Me. Sept. 29, 2006) (rec. dec., *aff'd* Oct. 20, 2006). *See* Statement of Errors at 6. In *Flannery*, this court held reversal and remand warranted based on an ALJ's mishandling of a Veterans' Administration disability rating. *See Flannery*, 2006 WL 2827656, at *2-3. Presumably, the plaintiff cites *Flannery* for its dictum that the ALJ's mental RFC finding was unsupported by substantial evidence when it was neither derived from expert opinion nor the product of a commonsense judgment. *See id*. at *3. This case is distinguishable in that, for the reasons discussed herein, the ALJ's RFC finding is supported by substantial evidence.

[3] As the plaintiff observes, *see* Statement of Errors at 7, SSR 96-2p has been rescinded as to claims filed on and after March 27, 2017, *see* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263, 15263 (Mar. 27, 2017).

521-JHR, 2016 WL 4766231, at *6 (D. Me. Sept. 13, 2016) ("[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand.").

Third, although the ALJ was not required to give good reasons for her weighing of Dr. Kimball's opinion, she did so. For the following reasons, the plaintiff's challenge to her rationales falls short:

1.  The ALJ did not state that the plaintiff worked after her 2012 injury. *See* Record at 46. Rather, she indicated that, while Dr. Kimball based his opinion on the plaintiff's congenital back condition plus her acquired injuries, the plaintiff had been able to work despite her congenital back condition and "earlier injuries" – presumably the 2010 injury – yet Dr. Kimball had not explained why, after her 2012 injury, she was unable to perform a lighter level of work. *Id.*

2.  The ALJ supportably found that Dr. Kimball had not explained why the plaintiff could not perform a lighter level of work after the 2012 injury. The plaintiff argues that Dr. Kimball clearly explained his rationale, stating, *inter alia*, that the second injury enlarged her disc herniation, leading to bilateral leg pain and increased sciatic nerve irritation that rendered her unemployable, and that only surgery might stop her severe pain, although its chances of success were only 50-50. *See* Statement of Errors at 9-10. Yet, these statements, even if accurate, do not explain how the plaintiff's back and leg pain imposed greater functional restrictions than those found by the ALJ. In turn, a lack of explanation constitutes a good reason to accord less weight to the opinion, even of a treating source. *See, e.g.,* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Further, as the commissioner notes, *see* Opposition at 8 n.3, Dr. Kimball did not give surgery a 50/50 chance of working; he merely reported that the plaintiff remembered

being told that by Dr. Weitman, although she did "not recall an explanation given of what [it] meant specifically," Record at 767.

3. The ALJ reasonably inferred that Dr. Kimball had likely relied on the plaintiff's statements that she was unable to manage her home and had been housebound for days at a time. Earlier in his report, Dr. Kimball had summarized the plaintiff's reported history, including her statements that she "remain[ed] housebound, sometimes days at a time[,]" and was "in bed a lot of the time[,]" *id.*, and he concluded that the plaintiff's "*history* suggests strongly that she is totally disabled from gainful employment at this time[,]" *id.* at 773 (emphasis added). That the plaintiff had not made similar statements to treating sources constituted a good reason to give less weight to the Kimball opinion. *See, e.g.,* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

4. Finally, the ALJ did not err in giving greater weight to the Weitman statement than to the Kimball opinion that surgery alone might restore the plaintiff's ability to engage in full-time work. As the ALJ noted, on July 10, 2013 (only six months prior to the Kimball examination), Dr. Weitman stated that, "as long as the [plaintiff]'s symptoms were not too debilitating, it would be wise to hold off on surgery." Record at 46 (citing *id.* at 729). The plaintiff contends that Dr. Weitman's opinion was predicated on the mistaken premise that injections had provided sufficient relief to warrant holding off surgery, and that subsequent treatment records bear out that her severe pain persisted despite various treatments. *See* Statement of Errors at 11. Yet, as the commissioner rejoins, *see* Opposition at 9-10, the plaintiff's continued reports of pain throughout the relevant period do not undermine the ALJ's reasoning. Indeed, as late as September 2015, neurosurgeon Rajiv D. Desai, M.D., recommended avoiding surgery at that time, explaining:

8

> With regard to [the plaintiff's] back and leg pain, surgery might be contemplated but given the spondylolisthesis there would be strong consideration given to fusion, she has three levels of disease and she is a young cigarette smoker. I therefore have strongly counseled her towards a more holistic approach towards wellness over the next three to six months with a revisit after that time depending on her course.

Record at 1267.

Nor, finally, is this a case in which the record is devoid of conflicting substantial evidence, in contrast to *Mawhinney*. The ALJ gave great weight to the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Marcia Lipski, M.D. *See id*. at 46-47, 100-03, 132-34. As the commissioner notes, *see* Opposition at 10, Dr. Lipski had the benefit of review of the Kimball report but reached a different conclusion, noting that Dr. Kimball had provided an opinion on "an issue reserved to the [c]ommissioner" – namely, whether the plaintiff was disabled, Record at 134. This court has rejected an argument that an ALJ was required to accept the opinion of an examining consultant in circumstances where, as here, the ALJ relied on the opinion of an agency nonexamining consultant who had the benefit of review of the examining consultant's report. *See Preston v. Colvin*, No. 2:13-CV-321-DBH, 2014 WL 5410290, at *4 (D. Me. Oct. 21, 2014). The same is true here.[4]

### B. Alleged Failure To Adequately Account for Pain in RFC

The plaintiff next argues that the ALJ failed to account for her "chronic, severe, and debilitating" pain in determining her RFC. Statement of Errors at 15. "The critical point[,]" she says, is that despite increasingly invasive treatments, she "has not experienced any sustained relief of her pain." *Id*. "[T]he ALJ misse[d] this point[,]" according to the plaintiff, failing to "draw any

---

[4] In *Preston*, the court had also rejected a separate challenge to the ALJ's reliance on the opinion of the agency nonexamining consultant. *See Preston*, 2014 WL 5410290, at *4. In this case, as well, the plaintiff separately challenges the ALJ's reliance on the Lipski opinion, arguing that it is unclear how Dr. Lipski concluded that the plaintiff's neurological examinations were "intact" and that her conclusion is contradicted by Dr. Kimball's report. Statement of Errors at 16 (internal quotation marks omitted). However, for the reasons discussed below, those points are not well-taken.

9

of the conclusions regarding [her] chronic severe pain that are clearly drawn by [her] treating specialists." *Id.* She contends that, as in *Mawhinney*, her allegations of disabling limitations resulting from chronic pain were supported by the objective medical evidence. *See id.* at 15-17. As a result, she argues, the ALJ was obliged pursuant to Social Security Ruling 16-3p ("SSR 16-3p") to accept them. *See id.* at 15-16.[5] This point of error, like the prior one, hinges on the assertion that there was no substantial evidence to the contrary in the record. Hence, it, too, is unavailing.

SSR 16-3p requires ALJs to perform a two-step analysis when evaluating a claimant's pain: they must (1) determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, and, (2) if so, evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit his or her ability work by examining the entire case record. *See* SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 666, 668. Here, the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms (thereby satisfying Step 1), but that her "testimony regarding her back pain and limitations" was unsupported by the medical evidence and inconsistent with her reported activities. Record at 45-46.

I conclude that, on this record, the ALJ was not compelled to accept the plaintiff's allegations, and her finding to the contrary is supported by substantial evidence.

As the commissioner notes, *see* Opposition at 12-13, the ALJ did not find that the plaintiff's treatment obviated her pain or restored her ability to perform her prior grocery store work. She assessed significant limitations that prevented the plaintiff from returning to that work, *see*

---

[5] The commissioner has clarified that SSR 16-3p, which supersedes Social Security Ruling ("SSR") 96-7p, applies to decisions issued on or after March 28, 2016. *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). The instant decision was issued on April 13, 2016. *See* Record at 49.

10

Findings 5-6, Record at 31, 47, and the plaintiff identifies no evidence that she had specific functional limitations beyond those the ALJ assessed. "Discomfort or even pain do not necessarily make one disabled." *Ivins v. Colvin*, Civil Action No. 12-11460-TSH, 2013 WL 6072890, at *8 (D. Mass. Nov. 15, 2013) (citing *Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) ("[D]isability requires more than mere inability to work without pain.")).

The ALJ explained in detail why she did not find the plaintiff's allegations of disabling symptoms consistent with the medical and other evidence of record. She noted, for example, that:

1. The plaintiff was able to work despite a long history of back pain, received some relief from injections, and "never appear[ed] to be in any acute distress" at medical appointments, with "her pain . . . almost always rated at 5 or lower despite the exertion required to get to the appointments." Record at 45.

2. The plaintiff did "little to improve her back pain, preferring to rely on pain medication" over suggested exercise, and continuing to smoke despite having been advised "of the effect of smoking on the degenerative changes in the spine[.]" *Id*. at 46.

3. The plaintiff reported feeding her mother's horses, sitting in bleachers at her children's school events, camping, and boating, which "indicate[d] that she [was] in fact able to sit, stand and walk for far longer than she allege[d]" and "support[ed] a finding that [she was] able to sit for a considerable length of time." *Id*.

4. "No treating source ha[d] assessed the [plaintiff]'s ability to perform basic work activities." *Id*.

The plaintiff does not address these findings, *see* Statement of Errors at 11-17, which satisfy the second step of SSR 16-3p, *see* SSR 16-3p at 668 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record,

including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."). When a plaintiff fails to challenge all relevant findings in evaluating his or her alleged symptoms, the ALJ's analysis "easily survives the applicable, deferential standard of review[.]" *Little v. Colvin*, No. 2:13-CV-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014).

Moreover, as discussed above, the ALJ relied on the RFC opinion of Dr. Lipski, who had reviewed records through March 2014. *See* Record at 46-47, 129-34. The plaintiff attempts to undermine this reliance, arguing that "[i]t is unclear where Dr. Lipski came up with the view that the Plaintiff's neurological exams are 'intact' since the objective MRI evidence shows they absolutely are not." Statement of Errors at 16. She contends that the Lipski observation is also contradicted by Dr. Kimball's observations that her gait was slow on leaving the examination room, she needed to hold onto the right side wall until she got to the waiting room, her straight leg raising on sitting reached only 50 degrees with pain in her lower back, and she had pain and discomfort on most physical motions. *See id*.

However, as the commissioner rejoins, Dr. Lipski specifically noted that Dr. Weitman had stated in July 2013 that the plaintiff "remain[ed] neurologically intact." Opposition at 13 (quoting Record at 129; citing *id*. at 729). In addition, as the commissioner observes, *see id*., after Dr. Lipski issued her opinion, the plaintiff's "treating providers continued to note normal gait and station, intact nerves and sensation, full strength, normal reflexes, and a negative straight leg raise."

*Id*. (citing Record at 898, 944-45, 948-49, 956, 1093, 1101, 1108, 1229, 1233, 1236, 1240, 1247, 1253, 1269, 1382, 1442-43, 1452).[6]

For all of these reasons, the ALJ's RFC determination, unlike that of the ALJ in *Mawhinney*, is supported by substantial evidence. Remand, accordingly, is unwarranted based on this point of error.

### C. Reliance on Lipski Opinion

The plaintiff finally argues that Dr. Lipski's opinion does not support the ALJ's finding that she is capable of performing work existing in significant numbers in the national economy. *See* Statement of Errors at 17. She contends:

> In her RFC, Dr. Lipski states that the Plaintiff can occasionally lift 10 pounds and frequently less than 10 lbs, specifically, 1-5 pounds. That opinion means that Dr. Lipski believes that the Plaintiff is limited to sedentary exertional demand work and cannot perform a light exertional job because light exertional demand requires the ability to lift 10 pounds frequently and 20 pounds occasionally. Dr. Lipski further believes that the Plaintiff needs to change positions as needed from sit to stand and vice versa up to 5 minutes per hour. This means that every hour in an 8-hour workday, Dr. Lipski believes that the Plaintiff must take a 5-minute actual break from work. Thus, this is not simply a sit/stand change in positions where a Plaintiff can change positions and seamlessly continue working. A 5-minute break every hour totals 40 minutes each day during which the plaintiff is not performing work. In turn, such breaks mean that in a normal 40-hour work week, the Plaintiff will be taking breaks every hour totaling 200 minutes, or 3 hours and 20 minutes. Vocationally, no employer would accommodate these additional and unscheduled breaks during the workday. *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 209 (3rd Cir. 2003).

*Id*. (emphasis and citation omitted).

Neither point is well-taken. As the ALJ noted, *see* Record at 48, a vocational expert ("VE") present at the plaintiff's hearing testified that a person who, *inter alia*, could only occasionally lift

---

[6] In one of the cited records, the provider stated that "[s]eated straight leg [raise] on the right caused back and leg pain" and "[s]eated straight leg raise on the left caused increased right back pain[.]" Record at 1233, and in two others, the provider described the plaintiff's gait as "slow and steady[,]" *id*. at 1442, 1452. Nonetheless, the commissioner's point overall is well-taken.

10 pounds, frequently lift less than 10 pounds, and sit for about six hours in an eight-hour workday with a need to alternate from sitting to standing or standing to sitting about five minutes every hour could perform the light jobs of linen grader and storage facility rental clerk and the sedentary job of charge account clerk, *see id*. at 86-88. The ALJ specifically questioned how such an individual could perform light work. *See id*. at 88-89. As the ALJ noted in her decision, the VE explained the seeming discrepancy:

> Although the [VE's] testimony is inconsistent with information contained in the Dictionary of Occupational Titles in terms of the light occupations given in response to the [RFC], there is a reasonable explanation for the discrepancy. The [VE] explained that while two of the occupations identified are light by the DOT standard, she is familiar with these occupations and has observed them and in her professional opinion they do not require lifting and/or carrying over 10 pounds occasionally and allow for alternating positions.

*Id*. at 48; *see also id*. at 86-89. The plaintiff fails to acknowledge, let alone challenge, this explanation. *See* Statement of Errors at 17.

Finally, as the commissioner points out, *see* Opposition at 14-15, Dr. Lipski did not state that the plaintiff would need a break from work for five minutes every hour but, rather, that she needed to be able to shift positions from sitting to standing and *vice versa* during that time frame, *see* Record at 132. The VE testified that an individual with that limitation could perform the three jobs discussed above, explaining, as the ALJ noted, the seeming discrepancy between that requirement and the typical demands of light jobs. *See id*. at 48, 86-89.

In any event, as the commissioner points out, *see* Opposition at 15 n.6, even if the plaintiff did require a five-minute break hourly, she would have needed only four five-minute breaks over the "normal breaks" contemplated in an eight-hour workday, *see, e.g., Plato v. Colvin*, Civil No. 1:12-CV-319-DBH, 2013 WL 5348603, at *14 (D. Me. Sept. 24, 2013) ("'Normal breaks' occur

approximately every two hours.") (citation omitted). *Boone*, which concerned a need to sit or stand at will every 30 minutes, *see Boone*, 353 F.3d at 210, is distinguishable.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 20th day of April, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge